## Southern States Fire Ins. Co. v. Kronenberg.

### Action on Fire Insurance Policy.

(Decided February 1, 1917.　74 South. 63.)

1. Insurance; Fire Insurance; Actions; Waiver of Breach of Covenants; Pleading.—In an action on a fire policy, where insured's breach of the iron-safe clause was set up, replications averring that the insurer's duly authorized agents waived the breach are not subject to demurrer.

2. Insurance; Fire Insurance; Breach of Covenants; Waiver; Jury Question.—Where insured set up a waiver by the insurer of breach of conditions in a fire policy, insured has the burden of proof.

3. Insurance; Fire Insurance; Waiver; Jury Question.—The disputed question of the authority of an agent of a fire insurance company to receive notice or waive breach of a condition of the policy is for the jury.

4. Insurance; Fire Insurance; Agents.—Fire companies may employ agents with general or limited authority as they may choose and as the nature of the business or the duties of the agency require.

5. Principal and Agent; "General Agent;" Authority of.—A "general agent" may be said to be one who has authority to transact all of the business of the principal of a particular kind or in a particular place, the powers of such an agent being prima facie coextensive with the business intrusted to his care.

6. Principal and Agent; Authority of Agent; Apparent Authority.—The ostensible or apparent authority of a general agent cannot be narrowed by secret instructions and limitations unless the party dealing with the agent had notice.

7. Principal and Agent; "Special Agent;" Authority.—A "special agent" is only authorized to act for the principal in a particular transaction and in a particular way of the business or matter intrusted to him.

8. Insurance; Fire Insurance; Breach of Conditions; Waiver.—Where a fire company before loss is notified of a forfeiture or breach of condition by

[Southern States Fire Ins. Co. v. Kronenberg.]

the insured, it is the duty of the company to take some affirmative action notifying insured that a forfeiture will be claimed, or a waiver may be inferred; but, when notice is had only after the loss, a waiver cannot be inferred from mere silence, but some affirmative act, conduct, or declaration of the company, evidencing an intent to waive the forfeiture, is necessary to furnish basis for a claim of waiver.

9. Insurance; Fire Insurance; Waiver of Forfeiture.—A fire company cannot waive a ground of forfeiture until it knows such ground exists or is in possession of facts which if it pursued would result in knowledge of the forfeiture.

10. Insurance; Fire Insurance; Waiver of Forfeiture.—A mere soliciting agent of a fire company, having only authority to take applications for insurance, and not directly acting for the company in the adjustment of losses, cannot waive a forfeiture for breach of the iron-safe clause.

11. Insurance; Fire Insurance; Waiver of Forfeiture.—Where the insured asserted a waiver of the forfeiture for his breach to comply with the iron-safe clause in a fire policy, testimony as to whether defendant's agent who was claimed to have waived the breach was acting within the apparent scope of his authority in attempting the adjustment of the loss, and whether his acts, declarations, and conduct amounted to a waiver of the forfeiture, is properly admissible.

12. Insurance; Actions; Evidence.—In an action on a fire policy by an assignee, where the issues raised by the pleadings were whether a forfeiture had been waived, the assignee should not be interrogated as to the mode of the assignment; that matter being immaterial, the assignee having testified that he was the owner of the policy.

13. Insurance; Fire Insurance; Actions; Motion for Jury.—In an action on a fire policy, held, that it was a question for the jury whether the policy was one falling within Code 1907, sections 4594, 4595, as amended by Acts 1911, p. 316, providing that where a contract of insurance is made by a company belonging to a tariff association there shall be added 25 per cent to the face of the policy.

14. Trial: Jury Question; Province of Court and Jury.—Where there is any evidence tending to establish plaintiff's cause of action, the court should not withdraw the case from the jury or direct a verdict, it being the province of the jury to decide conflicting tendencies in the evidence.

15. Insurance; Fire Insurance; Actions; Evidence.—In an action on a fire policy where it was contended that 25 per cent should be added to the face of the policy under Code 1907, sections 4594, 4595, as amended by Acts 1911, p. 316, because the insurer was a member of an underwriters' association, questions to the stamping clerk of the association as to whether he examined the rate of premiums to be charged on the policy in suit and stamped it, etc., are permissible.

16. Insurance; Fire Policies; Actions; Evidence; Admissibility.—Under Code 1907, sections 4594, 4595, as amended by Acts 1911, p. 316, providing that, if at the time of making such insurance contract or policy of insurance or subsequently before the time of trial the insurer belonged to or was a member or in any way connected with any tariff association or such like thing by whatever name called, or had made any agreement or understanding with any other person engaged in the business of insurance as to the rate of premiums to be charged, 25 per cent shall be added to the face of the

policy, an insurance company while penalized for belonging to a tariff association is not penalized for the doing of only an incidental thing, such as corresponding with a tariff association about a matter not connected with its policies or rates; the purpose of the statute being to prevent the formation of associations for the fixing of rates.

17. **Insurance; Fire Insurance; Actions; Evidence.**—In an action on a fire policy, it is not error to allow plaintiff to show how and when the fire was communicated to his property from other or adjacent buildings.

18. **Trial; Reception of Evidencee; Objections; Time.**—Where a question was of such nature as to inform defendant of the expected answer, an objection to the answer as irrelevant comes too late.

19. **Appeal and Error; Review; Waiver of Errors.**—Assignments of error not insisted upon in argument by counsel for appellant are deemed waived.

20. **Insurance; Action on Policy; Province of Jury; Directed Verdict.**—In an action on a fire policy, where there was evidence tending to make out a case for plaintiff, general affirmative charges are properly refused.

21. **Insurance; Fire Policies; Actions; Instructions; Proof.**—In an action on a fire policy, where forfeiture for breach of the iron-safe clause was relied on and the insured filed replications asserting a waiver of the breach, the refusal of a requested charge, that the burden of proof was on insured to satisfy the jury of the proof of matters set up as a waiver, and that unless reasonably satisfied from the evidence that insured had proven one of the replications verdict should be for defendant, was not error; the instruction being misleading as to what burden of proof the law imposed on insured to establish the waiver.

22. **Insurance; Fire Policies; Actions; Instructions.**—Where insured relied on waiver of a breach of a condition in the policy, requested charges that, in order to constitute a waiver, such waiver must have been made by defendant, or by an agent duly authorized or by an agent with authority to make such waiver, are properly refused tending to mislead the jury, where the agent had ostensible or apparent authority to waive the forfeiture.

23. **Insurance; Fire Policies; Actions; Instructions; Refusal.**—In an action on a fire policy, where insured relied on waiver by the agents of insurer who attempted to adjust the loss, refused charges that, if insurer had left the matter of adjustment to an adjustment bureau, no act of any other agent of the insurer unless expressly authorized to make such waiver would be sufficient to constitute a waiver, were erroneous disregarding the ostensible or apparent authority of the agent.

24. **Insurance; Fire Insurance; Actions; Instructions.**—In such case, the charge was properly refused as subjecting the insured to secret agreements that might have subsisted between the insurer and the adjustment bureau.

25. **Trial; Instructions; Refusal.**—The refusal of requests covered by the charges given is not error.

26. **Appeal and Error; Harmless Error; Evidence.**—In an action on a fire policy, where insured contended that an adjustment operated as a waiver of forfeiture for breach of the iron-safe clause, refusal to exclude testimony by counsel who represented insured in the adjustment proceedings as to counsel's statements to the insurer's agents concerning the honesty of the loss, made with respect to the nonwaiver agreement which was not signed, was not prejudicial error.

[Southern States Fire Ins. Co. v. Kronenberg.]

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by I. A. Kronenberg, as assignee, against the Southern States Fire Insurance Company of Birmingham, upon a fire insurance policy. Judgment for plaintiff, and defendant appeals. Affirmed.

Assignments Nos. 14 to 18, inclusive, are as follows:

(14) Overruling appellant's objection to the following question propounded by appellee to witness J. P. Hazzard:

"Don't you also examine the rate of premiums which was charged on the policy when you stamp it?"

(15) "Don't the Southeastern Underwriters' Association, the association which fixes the rate of insurance?"

(16) 'Now, Mr. Hazzard, isn't it a fact that this—as to what your duties were in there, to get it before the jury, you were representing .the Southeastern Tariff Association, and policies of insurance were sent by different companies through your office; the stamping consisting of putting a stamp on it, if the rate that you checked up compared with the established rate, but if it did. not you took some other action?"

(17) "State whether or not the Southern States Fire Insurance Company objected to the proceedings on your part of stamping the policies as you have testified and mailing the daily report to the company."

(18) Answer to last question: "I don't remember of any objection."

The following charges were refused to defendant:

(1) General affirmative charge.

(2 and 4) Same.

(B) I charge you that the burden of proof is on plaintiff to satisfy you of the proof of the matters set up as a waiver; and, unless you are reasonably satisfied from the evidence that plaintiff has proven one of its replications, your verdict must be for defendant.

(38) I charge you that in order to constitute a waiver of the violation of a warranty in the policy sued on, which would defeat such policy, such waiver must have been made by defendant, or by an agent duly authorized to make such waiver with knowledge of the alleged violation.

(15) I charge you that, in order to constitute a waiver of any violation of the policy sued on which would defeat such policy,

such waiver must have been made by an agent of defendant with authority to make such waiver.

(4) If defendant had left in the hands of the Southern Adjustment Bureau the matter of handling the adjustment of the loss under the policy sued on, no act of any other agent of such company would be sufficient to constitute a waiver of any violation of the policy by the assured, unless such agent was expressly authorized to make such waiver, or did so with the acquiescence of defendant.

(4) Unless you are reasonably satisfied from the evidence that the Southern Adjustment Bureau, after knowledge of the violation of the policy sued on, recognized and treated such policy as valid and binding, and adjusted the loss and damage under said policy, then your verdict must be for defendant.

Other matters sufficiently appear.

TILLMAN, BRADLEY & MORROW and P. P. WALDROP for appellant. SAMUEL B. STERN and JOHN T. GLOVER for appellee.

THOMAS, J.—This action was brought by the plaintiff on a policy of fire insurance, whereby the defendant insured a certain stock of merchandise of the Republic Dry Goods Company at Republic, Ala.

Plaintiff avers the destruction by fire of the insured property on October 24, 1913; that the interest of the assured in and to said policy of insurance and the proceeds thereof was assigned to plaintiff; and that he is the owner thereof. In addition to the amount of the policy, the plaintiff claims 25 per cent. penalty on account of membership in, or connection with, the Southeastern Underwriters' Association, in accordance with sections 4594 and 4595 of the Code of Alabama, as amended by an act approved April 7, 1911 (Gen. Acts 1911, p. 316).

The defendant pleaded the general issue, and several special pleas averring different breaches of the warranty contained in that part of the policy known as the "iron-safe clause." In this clause the assured warranted that a set of books, presenting a complete record and inventory of all purchases, sales, shipments, and stock on hand at all times, would be kept by assured in a place not exposed to fire, and securely locked in a fire-proof safe at night, and that in case of loss such books would be produced for the inspection of the insuring company; and agreed that, in

the event of failure to produce such set of books and inventories, the policy should become null and void.

(1) The plaintiff filed replications, in which a waiver of the defense pleaded was averred. The first replication set up an alleged waiver by one M. J. Harper, the agent of defendant who wrote the policy sued on, in that such agent, "with full power and authority on behalf of the defendant. * * * made an adjustment of said loss and damage with the Republic Dry Goods Company, Inc., * * * after having been fully informed in every particular as to how and when * * * the assured had violated the terms, conditions, covenants, and warranties of the policy sued on, recognized and treated said policy as binding and valid, and promised to pay to the assured * * * the sum of $1,500 in full payment of the demand herein sued for." The second replication averred a similar waiver by the Southern Adjustment Bureau, acting for defendant. The third replication was like unto the second, except that, in addition to the allegation of waiver by the Southern Adjustment Bureau, it contained the averment that M. J. Harper, with full power and authority to bind the defendant, promised that the defendant would pay the alleged adjustment made by the Southern Adjustment Bureau.

No error was committed in overruling the demurrers to the replications.

The facts averred in defendant's pleas were admitted by the plaintiff's witness B. Zavello, manager of the Republic Dry Goods Company, and the evidence presents no contradiction to the pleas.

As to the replications of the plaintiff, it was undisputed that Mr. Zavello, after the fire in question, went to the office of M. J. Harper, said agent, and that Mr. Harper sent him to the Southern Adjustment Bureau, where the matter of claim of loss was taken up. On questioning by the agents of the adjustment bureau, Mr. Zavello stated that the books of the assured had burned; and it was thus ascertained that the warranty in the policy of insurance had been violated. Thereupon a nonwaiver agreement was presented to Mr. Zavello for signature before proceeding further in regard to the adjustment of the claim of loss. The matter of signing the nonwaiver agreement was discussed on several occasions by the parties, but in the end it was not signed.

(2) The testimony as to the waiver set up in the several replications was in conflict. The burden of proof was on the plaintiff as to this waiver.—*Ala. State Mut. Ass. Co. v. Long, etc.,* 123 Ala. 667, 677, 678, 26 South. 655; *B. R., L. & Po. Co. v. Washington,* 192 Ala. 617, 69 South. 65.

(3) A disputed question of the authority of the agent to receive the notice, or to waive a breach of the contract provisions of the policy, is for the jury.—*Cont. Ins. Co. v. Parkes,* 142 Ala. 650, 39 South. 24; *Robinson v. Ætna Fire Ins. Co.,* 128 Ala. 477, 30 South. 665; *Ray v. Fidelity Fire Ins. Co.,* 187 Ala. 91, 96, 65 South. 536; *Penn Fire Ins. Co. v. Draper,* 187 Ala. 103, 65 South. 923.

The effect of the nonwaiver agreement has heretofore been declared by this court.—*Queen Ins. Co. v. Young,* 86 Ala. 424, 5 South. 116, 11 Am. St. Rep. 51; *Day v. Home Ins. Co.,* 177 Ala. 600, 58 South. 549, 40 L. R. A. (N. S.) 652; *Penn Fire Ins. Co. v. Draper, supra.*

As to the "iron-safe clause," there is no conflict in the evidence that insured did not comply with this provision of the policy. However, three questions are presented under the evidence: (1) Did defendant know of this failure of compliance before the fire damage, and waive compliance by acquiescence? (2) If this fact was known to defendant's agent, was he such agent with authority to bind the company by such acquiescence? (3) Did the insurer, after the destruction of the property, with knowledge of the breach of this clause of its policy acquired subsequent to the loss, by act, conduct, or declaration, in the attempted adjustment of the claim for the loss, waive said contract provisions?

(4-7) Insurance companies have the right to employ agents with general or limited authority, as they may choose, and as the nature of the business or the duties of the agency require.—*Penn, etc., Co. v. Draper, supra; Queen Ins. Co. v. Young, supra; Cent. City Ins. Co. v. Oates,* 86 Ala. 558, 6 South. 83, 11 Am. St. Rep. 67; *Waldman v. N. B. & M. Ins. Co.,* 91 Ala. 170, 8 South. 666, 24 Am. St. Rep. 883; *L. & L. & G. Ins. Co. v. Tullis,* 110 Ala. 201, 17 South. 672; *Ga. Home Ins. Co. v. Allen,* 119 Ala. 436, 24 South. 399; *Ala. S. M. A. Co. v. Long, etc., Co., supra; Robinson v. Ætna Ins. Co., supra; Cassimus v. Scottish Union Co.,* 135 Ala. 256, 33 South. 163. A "general agent" may be said to be one who has authority to transact all of the business of the principal,

of a particular kind, or in a particular place. The powers of such an agent are prima facie coextensive with the business intructed to his care, authorizing him to act for the principal in all matters coming within the usual and ordinary scope and character of such business. The ostensible or apparent authority of such an agent cannot be narrowed by secret instructions and limitations from the principal, unless the party dealing with the agent has notice of them. A "special agent" is authorized to act for the principal in the particular transaction, or in the particular way of the business or matter intrusted to him.—*Cruzan v. Smith,* 41 Ind. 288, 297; *Falls v. Gaither,* 9 Port. 605; *Wood v. McCain,* 7 Ala. 803, 804, 42 Am. Dec. 612; *Burks v. Hubbard,* 69 Ala. 379; *Wheeler v. McGuire, Scoggins Co.,* 86 Ala. 398, 5 South. 190, 2 L. R. A. 808; *Phoenix Ins. Co. v. Copeland,* 90 Ala. 386, 8 South. 48; *Gibson v. Snow Hardw. Co.,* 94 Ala. 346, 10 South. 304; *Syndicate Ins. Co. v. Catchings,* 104 Ala. 176, 16 South. 46; *Singer Co. v. McLean,* 105 Ala. 316, 16 South. 912; *B. M. R. R. Co. v. T. C., I. & R. R. Co.,* 127 Ala. 137, 28 South. 679; *Ga. Home Ins. Co. v. Allen,* 128 Ala. 451, 30 South 537; *Penn, etc., Co. v. Draper, supra.*

(8, 9) As to notice to the insurer of a forfeiture by the insured, and the duty of the insurer thereafter, it may be said: (1) If the notice of forfeiture is given the insurer before the destruction of the property, it is the duty of the insurer to take some affirmative action by which to express dissent in an unequivocal way, and put the assured on notice that the forfeiture will be claimed. That is to say, before the damage has occurred, and after notice of forfeiture, a waiver of the forfeiture may be inferred from mere silence on the part of the insurer if it be for such an unreasonable time as to imply the purpose not to insist on the forfeiture. (2) Where notice of the forfeiture was had by the insurer only after the damage, destruction, or loss, a waiver of such forfeiture cannot be inferred from mere silence; some affirmative act, conduct, or declaration, of the insurer, evidencing the intent to waive the forfeiture, is requisite.—*Ala. State Mut. Ass. Co. v. Long, etc., Co., supra,* 123 Ala. 675, 676, 26 South. 655; *Queen Ins. Co. v. Young, supra; Cassimus Bros. v. Scottish, etc., Co., supra; Sovereign Camp, W. O. W., v. Jones,* 11 Ala. App. 433, 66 South. 834. In any event, there can be no such thing as a waiver by an insurance company of a ground of forfeiture until the company knows that such ground exists, or

until it is in possession of facts which, if pursued, would result in knowledge of the forfeiture.—*Security Co. v. Laird*, 182 Ala. 121, 125, 62 South. 182.

(10) Not every agent of an insurance company can waive forfeiture upon a breach of the material provisions or conditions of the policy such as, for examples: That insured will not take subsequent insurance without notice (*Ala. S. M. A. Co. v. Long, etc., Co., supra; Queen Ins. Co. v. Young, supra; Phoenix Ins. Co. v. Copeland*, 90 Ala. 386, 8 South. 48) ; the 'iron-safe clause" (*Penn Fire Ins. Co. v. Draper, supra; Day v. Home Ins. Co., supra; Ga. Home Ins. Co. v. Allen, supra*) ; the stipulation for a sworn statement of the circumstances of the loss by the insured (*Ray v. Fidelity-Phoenix Ins. Co., supra*) ; stipulations as to the storage of gasoline (*Ætna Fire Ins. Co. v. Kennedy*, 161 Ala. 600, 607, 50 South. 73, 135 Am. St. Rep. 160; *Cassimus Bros. v. Scottish, etc., Co., supra*) ; the provision for rescission of the contract of insurance (*Allen v. Smith*, 165 Ala. 247, 51 South. 724). The contract relations of the parties, after the policy has been issued and delivered to the insured, cannot be changed or waived by a mere soliciting agent having only authority to take applications for insurance, and not apparently acting for the company in the adjustment of loss thereunder.

After consideration of the evidence on this point, we are of the opinion that the company had no notice, before the destruction of the property by fire, of insured's disregard of the policy provision termed the "iron-safe clause." If the agent who took the application for, and delivered, the policy of insurance, did thereafter have knowledge that the insured had no iron safe in which to keep his inventories, as required by the provisions of the policy, this was not notice to the company, since he was then only a special agent to negotiate for its applications of insurance.

The evidence is clear, further, that the notice of the insured's breach of the "iron-safe" condition of the policy came to the company through its authorized agents only after the destruction by fire of the property so insured. It was then necessary that the company do some unequivocal act, or adopt some course of conduct, or make some declaration, amounting to waiver of the forfeiture under this provision of the policy. The law on this point has been reiterated in *Penn Fire Insurance Co. v. Draper, supra; Ray v. Fidelity-Phoenix Co., supra; Day v. Home Insurance Co., supra.* The rule of waiver adhered to in these cases

was that announced in *Insurance Co. v. Young, supra,* and *Georgia Home Insurance Co. v. Allen, supra.*

(11) The trial court committed no error in admitting the testimony objected to, as tending to shed light upon the questions whether defendant's agent was acting within the apparent scope of his authority in attempting the adjustment of said loss, and, if so, whether the acts, declarations, and conduct of such agent amounted to a waiver of the forfeiture under the condition of the policy relied on by defendant. It is unnecessary to discuss the evidence on this point. It is sufficient to say that a jury question was presented.

(12) The evidence of plaintiff was to the effect that he was the owner of the policy sued on. Whether its assignment was oral or written, and what was the consideration therefor, were immaterial inquiries under the pleading. The court committed no error in declining to permit witness Kronenberg to be interrogated as to these matters.—*Sheffield Nat. Bank v. Corinth Bank & Trust Co.,* 196 Ala. 275, 72 South. 127; *Insurance Company of North America v. Forcheimer & Co.,* 86 Ala. 541, 5 South. 870; *Taylor v. Perry,* 48 Ala. 240, 245; *Cosmopolitan Fire Ins. Co. v. Gingold,* 3 Ala. App. 537, 57 South. 266.

(13) Assignments of error numbers 14 to 18, inclusive, challenge the rulings of the trial court as to questions propounded to, and answered by witness, J. P. Hazzard, a stamping clerk with the Southeastern Underwirters' Association at the time of the trial and during the month of October, 1913, when the policy in question was issued and delivered to the insured by the Southern States Fire Insurance Company. Under the testimony of this witness, a jury question was presented as to whether the contract of insurance sued on came within the class defined by the act of 1911 (Gen. Acts 1911, p. 316), amendatory of sections 4594 and 4595 of the Code, and dealing with the subject indicated in the caption: "Contract of insurance made by company belonging to tariff association construed to add 25 per cent. to face of policy." The same question raised by the objections and exceptions to this evidence was likewise presented by the refusal of the defendant's written charge : "If the jury believe the evidence, they cannot find the 25 per cent. penalty provided by the statute."

(14, 15) If there be any evidence which tends to establish the plaintiff's cause, the court should not withdraw the same from

the jury or direct a verdict. It is not for the court to adjudge of the sufficiency of the evidence or decide which of conflicting tendencies of the evidence should be adopted by the jury.—*Tobler v. Pioneer Mining & Mfg. Co.,* 166 Ala. 517, 52 South. 86; *Amerson v. Corana Coal & Iron Co.,* 194 Ala. 175, 69 South. 601.

The court properly refused this charge, and correctly admitted this evidence.

(16) The act amending sections 4594 and 4595 of the Code, just adverted to, provides for the penalty under the following conditions:

"If at the time of making such contract or policy of insurance or subsequently before the time of trial, the insurer belonged to, or was a member of, or in any way connected with any tariff association or such like thing by whatever name called or who had made any agreement or had any understanding with any other person, corporation or association engaged in the business of insurance as agent or otherwise about any particular rate of premium which should be fixed or charged or fixed for any kind or class of insurance risk," etc.

The expression in the statute, 'or in any way connected with any tariff association or such like thing," may not be construed to mean that an insurance company may be penalized for the doing of only an incidental thing, such as corresponding with a tariff association about a matter not connected with its policies and the rates thereon. This penal statute must be given a stricter interpretation, as intended by the Legislature (*Atlanta & St. Andrews Bay Ry. Co. v. Fowler,* 192 Ala. 373, 68 South. 283), to prevent the fixing of insurance rates to be charged, or which should be charged, for a particular class of insurance risk.

The tendency of the evidence in question was to show an association, or joint dealing, on the part of the defendant company, with the underwriters' association, and defendant's liability vel non for this 25 per cent. penalty, as applying to a loss on the policy in question, was properly submitted to the jury.

(17) There was no error in allowing the plaintiff to show how and when the fire was communicated to his building from other or adjacent buildings as a part of the transaction or cause of the destruction of the property in question.

(18) The question whether the plaintiff had other insurance, if irrelevant, was not objected to till after answer made, and it was of such nature as to inform the defendant of the expected

answer. Moreover, there was no error in overruling defendant's motion to exclude the answer, in view of the other provisions of the policy as to additional insurance and apportionment of the insurance loss.

(19) The invoices were competent evidence, as tending to prove plaintiff's replications. This particular assignment of error is not insisted on in argument by counsel for appellant.— *Ga. Cotton Co. v. Lee*, 196 Ala. 599, 72 South. 158.

(20) Under the evidence, affirmative charges 1, 2, and 4, requested by defendant, were properly refused.

(21) The several written charges requested and given at the instance of the defendant did not instruct the jury as to the burden of proof under the three replications to the defendant's plea of waiver. There were no error in refusing defendant's written charge B, as being confusing to the jury. Its first clause required the jury to be "satisfied" of the truth of the matter set up as a waiver; whereas, the legal condition to a recovery by the plaintiff under the replications, or under either one of them, was that the jury should be "reasonably satisfied."—*Emerson v. Lowe Mfg.* Co., 159 Ala. 350, 49 South. 69; *Moore v. Heineke*, 119 Ala. 627, 640, 24 South. 374; *Smiley v. Hooper*, 147 Ala. 646, 652, 41 South. 660, 661. The statement, in the latter part of the charge, "unless you are reasonably satisfied from the evidence that the plaintiff has proved one of its [his] replications, your verdict must be for the defendant," did not make plain what burden of proof the law imposed upon the plaintiff as to "the matter set up as a waiver."

(22) Charges 38 and 15, by their respective use of the expressions "duly authorized" and "with authority," were calculated to mislead the jury where the agent had the "ostensible or apparent authority" to undertake, or to make adjustment of a fire loss or claim set up under the policy.—*Penn. Fire Ins. Co. v. Draper, supra; Georgia Home Ins. Co. v. Allen, supra*, 128 Ala. 459, 30 South. 537; *Ray v. Fidelity-Phoenix Ins., supra;* 1 Joyce on Ins., §§ 425, 426, 440.

(23, 24) Refused charges 4 and D, which sought to instruct the jury that, if the defendant had left in the hands of the Southern Adjustment Bureau the matter of handling the adjustment of the loss under the policy, no act of any other agent of the company, unless such agent were expressly authorized to make such waiver, would be sufficient to constitute a waiver of any violation

of the policy by the assured, were likewise subject to the infirmity of ignoring the ostensible or apparent authority of such agent. Moreover, the charges would have subjected the plaintiff to secret agreements that may have subsisted between the defendant and the Southern Adjustment Bureau, for it was within the power of the defendant to leave the matter of the adjustment of the claim with its other adjusters or agents having or exercising the apparent authority to adjust the loss.

(25) Charges 6 and 7 were properly refused, as the defendant had the benefit of the same under its given charges.

(26) The twenty-fourth and twenty-fifth assignments of error are based on the refusal of the court to exclude these statements of the witness Stern: "If there is any question in the minds of you gentlemen as to the honesty of this fire." And: "But as to the amount of stock he had on hand I would waive this, and leave it open for them to find out and discuss, I said, if you have in mind that this man has not lost." These statements were narrative in form, and as soon as made defendant's counsel moved to exclude them as irrelevant and prejudicial. The court denied this motion. The witness was detailing the conversation that had occurred between witness, as plaintiff's counsel, and defendant's agents, as to the adjustment and the nonwaiver agreement; and no prejudicial error was committed in this ruling.

The exception in the instant case is different from that in the case of *Southern Railway Co. v. Renes*, 192 Ala. 620, 68 South. 987, where reversal was awarded on account of the prejudicial testimony as to plaintiff's educational deficiencies.

Let the judgment of the city court be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.